IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**WEIRTON AREA WATER BOARD**
and **CITY OF WEIRTON**,

        Plaintiffs,

v.

**CIVIL ACTION NO. 5:20-CV-102**
Judge Bailey

**3M COMPANY, E. I. DUPONT DE NEMOURS
AND COMPANY, THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC, CORTEVA,
INC., DUPONT DE NEMOURS INC., AGC
CHEMICALS AMERICAS INC., ARCHROMA U.S.,
INC., ARKEMA, INC., BASF CORPORATION,
CHEMDESIGN PRODUCTS, INC., CHEMGUARD
INC., CHEMICALS, INC., CLARIANT CORPORATION,
DAIKIN AMERICA, INC., DEEPWATER CHEMICALS
INC., DYNAX CORPORATION, DYNEON, LLC,
SOLVAY SPECIALTY POLYMERS USA, LLC.,
SOLVAY USA, INC., THE ELÉ CORPORATION,
ARCELORMITTAL WEIRTON LLC,** and **NEO
INDUSTRIES (WEIRTON), INC.**,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court is The Manufacturing Defendants' Joint Motion to Dismiss [Doc. 143], filed July 31, 2020. Therein, defendants 3M Company, E.I. du Pont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., DuPont de Nemours, Inc., AGC Chemicals Americas Inc., Archroma U.S., Inc., Arkema, Inc., BASF Corporation, ChemDesign Products, Inc., Chemguard Inc., Chemicals, Inc., Clariant Corporation, Daikin America Inc., Deepwater Chemicals, Inc., Dynax Corporation, Solvay Specialty Polymers USA, LLC, Solvay USA, Inc., and The Elé

1

Corporation (collectively the "Manufacturing Defendants") move to dismiss Plaintiffs Complaint with prejudice for failure to state a claim.[1] Plaintiffs filed a Response on October 2, 2020. See [Docs. 194–195]. On November 6, 2020, a Reply [Doc. 215] was filed. Having been fully briefed, the instant Motion is now ripe for decision. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

The plaintiffs originally filed this action in the Circuit Court of Brooke County, West Virginia, on April 15, 2020. [Doc. 1-1]. In the Complaint, plaintiffs allege that the Weirton Water System has been contaminated with per- and poly-fluoroalkyl substances ("PFAS"), including perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). [Id. at 7]. Plaintiffs allege that 3M Company, E.I. Dupont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., Dupont de Nemours, Inc., AGC Chemicals Americas Inc., Archroma U.S., Inc., Arkema, Inc., BASF Corporation, Chemdesign Products Inc., Chemguard Inc., Chemicals, Inc., Clariant Corporation, Daikin America, Inc., Deepwater Chemicals, Inc., Dynax Corporation, Dyneon, LLC, Solvay Specialty Polymers, USA, LLC., Solvay USA, Inc., and the Elé Corporation (collectively the "Manufacturing Defendants") "designed, developed, manufactured,

---

[1] On November 20, 2020, this Court dismissed the following defendants: AGC Chemicals Americas, Inc.; Archroma U.S. Inc.; Chemicals Incorporated; Dynax Corporation; Solvay USA, Inc.; Solvay Speciality Polymers USA, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. See [Docs. 227, 232, 238, 237, 235, 236, & 234].

Furthermore, this Court granted jurisdictional discovery in regard to the following defendants: 3M Company; BASF Corporation; ChemDesign Products, Inc.; Chemguard, Inc.; Daikin America, Inc.; Deepwater Chemicals, Inc.; and The Elé Corporation. See [Docs. 229, 226, 225, 231, 233, 224, & 223].

Lastly, as noted by the Manufacturing Defendants in Footnote 1, Dyneon, LLC does not join the instant Motion because "it has not existed since 2011." See [Doc. 143 at 2].

marketed, and sold PFAS throughout the United States, including West Virginia." [Id. at 8]. Furthermore, plaintiffs assert defendants Arcelormittal Weirton LLC and Neo Industries (Weirton), Inc. (collectively the "Facility Defendants") "used, stored, distributed and/or discharged PFAS and/or products containing PFAS in their operations and caused the release of these chemicals into the surrounding soil, surface water and groundwater in and around their facilities." [Id.].

In their Complaint, plaintiffs allege that the defendants "knew or should have known that their operations would cause PFAS and/or products containing PFAS to be discharged into the environment and inevitably contaminate surface water and groundwater drinking supplies. . . ." [Id. at 9]. Plaintiffs allege numerous causes of action against the defendants, including product liability for defective design against the Manufacturing Defendants (count 1), product liability for failure to warn against the Manufacturing Defendants (count 2), public nuisance against all defendants (count 3), negligence against all defendants (count 4), negligence per se against all defendants (count 5), trespass against all defendants (count 6), and fraudulent transfers against the DuPont Defendants[2] (count 7). As a result of the unlawful conduct, plaintiffs seek compensatory damages, punitive damages, and other damages.

On May 26, 2020, defendant Neo Industries (Weirton), Inc. filed a Notice of Removal [Doc. 1] arguing that this Court has jurisdiction over the litigation based on diversity of citizenship. On June 24, 2020, plaintiffs filed a Motion to Remand [Doc. 113]

---

[2] The DuPont Defendants consist of: E.I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont de Nemours, Inc. See [Doc. 1-1 at 36].

3

that this Court denied [Doc. 169] the Remand on August 10, 2020. On July 31, 2020, seventeen (17) Motions to Dismiss were filed by numerous defendants. On October 2, 2020, plaintiffs filed a response. *See* [Docs. 194–195]. On November 6, 2020, the Manufacturing Defendants filed a Reply. [Doc. 215]. For the following reasons, The Manufacturing Defendants' Joint Motion to Dismiss is hereby denied.

## II. STANDARD OF REVIEW

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); *see also* **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro,** 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," **Id**. at 1964–65, upheld the dismissal of a complaint where the

plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 1974.

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396–97.

### III. ANALYSIS

The Manufacturing Defendants make the following argument: the plaintiffs fail to state a claim that would entitle them to relief before this court because the Complaint fails to set forth any facts to support any nexus between the alleged activity by the Defendants and plaintiffs' stated injuries. The Manufacturing Defendants move for dismissal of plaintiffs' claims, summarizing why they are entitled to dismissal as follows:

> 3. Having failed to allege any facts linking any Manufacturing Defendant or any product sold by any Manufacturing Defendant to the PFAS supposedly in the Weirton Water System—and having asserted that it would be impossible to do so—Plaintiffs cannot plead causation and other crucial elements of their claims.
>
> 4. In addition, Plaintiffs' two product liability claims fail because (a) Plaintiffs cannot base their claims on a third party's disposal of the Manufacturing

Defendants' products and (b) Plaintiffs do not (and admit that they cannot) identify the products at issue or the purported design and warning defects.

5. The two negligence claims warrant dismissal because the Manufacturing Defendants do not owe Plaintiffs any relevant duty.

6. Plaintiffs' nuisance claim should not proceed because (a) West Virginia law requires a defendant's unreasonable *land* use, precluding the products-based nuisance claims alleged here and (b) the Manufacturing Defendants do not control the allegedly nuisance-creating PFAS discharges in any event.

7. The trespass claim should be dismissed because the alleged PFAS contamination is not a tangible property invasion.

8. And none of the requested damages are available because (a) no applicable law, regulation, or other alleged obligation requires Plaintiffs to undertake the *voluntary* upgrades and other work claimed as compensable damages in order to address the low PFAS levels allegedly present in the Weirton Water System, and (b) Plaintiffs have no right to recover for injuries to Weirton-area residents or natural resources.

[Doc. 143 at 2–3]. In sum, the Manufacturing Defendants argue that the Complaint does not provide a link to any Manufacturing Defendant to the PFAS allegedly found in the Weirton Water System.

In plaintiffs' response, plaintiffs countered that the Complaint contains legally sufficient factual allegations to support plausible prima facie claims of (1) product liability for defective design; (2) product liability for failure to warn; (3) negligence; (4) negligence *per se/prima facie* negligence; (5) public nuisance; and (6) trespass.

6

## I.     Product Liability for Defective Design

In West Virginia, a design defect case requires the following elements to be met: "(1) the design of the product at issue is defective in the sense that it renders the product not reasonably safe for its intended use, and (2) the defect proximately caused (3) the plaintiff's injury." *Mullins v. Ethicon, Inc.*, 117 F.Supp.3d 810, 812 (S.D. W.Va. 2015). *See also Waters v. Electrolux Home Products, Inc.*, 154 F.Supp.3d 340, 351–352 (N.D. W.Va. 2015) (Stamp, J.) (stating that a manufacturer is strictly liable for injuries caused by its products if "the involved product is defective in the sense that it is not reasonably safe for its intended use.")  The first element involves several sub-issues.  First, the standard to determine reasonable safeness is "by what a reasonably prudent manufacturer's standards should have been at the time the product was made." *Id.* (quoting *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 307 S.E.2d 603 (1983)).  Second, the relevant design standards are those existing "at the time the product was made." *Mullins*, 117 F.Supp.3d at 812.  Finally, when evaluating the reasonable safeness of the product, the fact-finder must weigh other considerations, "including the 'general state of the art of the manufacturing process' at the time the product was made; the product's design, labels, and warnings; and economic costs." *Id.* (citing Syl. Pt. 5, *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979)).  There are three broad, "and not mutually exclusive," categories that a defective product may fall into: design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels. *Id.*

Here, the plaintiffs have sufficiently alleged enough facts to satisfy the elements for defective design against the Manufacturing Defendants. First, plaintiffs sufficiently allege that the Manufacturing Defendants' PFAS chemicals and/or products containing PFAS were "not reasonably safe for [their] intended use" and knew or should have known of the dangers of PFAS entering the water system. *See* [Doc. 1-1 at ¶¶ 154–156, 158–159]. Second, plaintiffs sufficiently allege that the Manufacturing Defendants proximately caused the contamination of the Weirton Water System. *See* [Id. at ¶¶ 161, 173]. Lastly, the plaintiffs have alleged injury due to the contamination of PFAS in the water system. [Id. at ¶¶ 161–162]. Therefore, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' design defect claim will be **DENIED**.

## II.     Product Liability for Failure to Warn

In West Virginia, a failure-to-warn claim "requires proof that the use of the product was foreseeable, that the product was defective due to a failure to warn, and that the failure to warn proximately caused the injury." *Howard v. Eaton Corp.*, 2016 WL 6651592 (W.Va. 2016) (citing *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 442, 307 S.E.2d 603, 610 (1983)). "[T]he focus is not so much on a flawed physical condition of the product, as on its unsafeness arising out of the failure to adequately label, instruct, or warn." *Ilosky*, 172 W.Va. at 441 (citing *Morningstar*, 162 W.Va. at 888).

Plaintiffs contend that they have set forth "numerous examples of the Manufacturer Defendants' actual or constructive knowledge of the harm posed by PFAS to human health and the environment. . . ." [Doc. 195 at 23]; *see also* [Doc. 1-1 at ¶¶ 118–139, 142]. Furthermore, the plaintiffs contend they have set forth the Manufacturing Defendants'

8

"denial, minimization and active concealment of such risks. . . ." [Id.]; see also [Doc. 1-1 at ¶¶ 140, 141, 149]. The plaintiffs Complaint also states that the Manufacturing Defendants had "unequal knowledge as between the manufacturers and third party purchasers and consumers. . . ." [Id.]; see also [Doc. 1-1 at ¶¶ 152, 157, 166]. Lastly, the plaintiffs' Complaint lays out what injuries resulted from the failure to warn. [Id.]; see also [Doc. 1-1 at ¶ 173].

In this case, this Court finds that the plaintiffs have alleged enough facts to satisfy their claim for a failure-to-warn at this stage. The Plaintiffs have pled sufficient facts to allege that it was foreseeable to the Manufacturing Defendants that PFAS and/or products containing PFAS was going into the water. Therefore, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' failure-to-warn claim will be **DENIED**.

## III.    Negligence

Plaintiffs contend they have sufficiently pled the key negligence elements of duty, breach, causation, and injury. Plaintiffs allege three duties that were owed:

> 198. Defendants owed Plaintiffs a cognizable duty to exercise reasonable care in designing formulating, manufacturing, distributing, selling, supplying, and/or marketing unreasonably dangerous chemicals such as PFAS and/or products containing PFAS.
>
> . . .
>
> 200. Defendants had a duty to adequately and timely warn federal, state, and local regulators and authorities, Plaintiffs, and the public, of the

presence of and threats posed by releases of PFAS into the environment and, especially, its presence in water.

201. Defendants also had an affirmative duty to remove and remediate the PFAS contamination from surface water and groundwater, including in the Weirton Water System and Weirton Area watershed in the vicinity of the Weirton Water System.

[Compl. 1-1 ¶¶ 198, 200–201]. Plaintiffs further state that the defendants breached their duties by "negligently putting PFAS into the stream of commerce, including in and around the Weirton Area watershed, when they knew or should have known about the dangers PFAS posed to water." [Id. at ¶ 199]. Plaintiffs pled causation and injury by stating in the Complaint that "Defendants' past and continuing breach of their duties is the direct, sole and proximate cause of substantial and continuing harm to Plaintiffs and the Weirton Water System and of Plaintiffs' damages."

Thus, this Court finds that plaintiffs Complaint alleges sufficient facts to state a claim for relief that is plausible on its face. Construing the facts in the light most favorable to the plaintiffs, this Court finds that plaintiffs have sufficiently pled the four necessary elements of negligence. Therefore, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' negligence claim will be **DENIED**.

**IV.    Negligence *Per Se/Prima Facie* Negligence**

10

In West Virginia, "the law in this state is now settled that the violation of a statute is *prima facie* negligence and not negligence *per se*." ***Spurlin v. Nardo***, 145 W.Va. 408, 415, 114 S.E.2d 913, 918 (1960). *See also* ***Moore v. Skyline Cab Co.***, 134 W.Va. 121, 59 S.E.2d 437; ***Morris v. City of Wheeling***, 140 W.Va. 78, 82 S.E.2d 536; ***Barniak v. Grossman***, 141 W.Va. 760, 93 S.E.2d 49. Violation of a statute can constitute *prima facie* negligence "if an injury proximately flows from the non-compliance and the injury is of the sort the regulation was intended to prevent." ***Miller v. Warren***, 390 S.E.2d 207, 208–09 (W.Va. 1990).

The relevant portions of the statutes in question are as follows:

### West Virginia Water Pollution Control Act ("WPCA"):

(b) It is unlawful for any person, unless the person holds a permit therefor from the department, which is in full force and effect, to:

(1) Allow sewage, industrial wastes or other wastes, or the effluent therefrom, produced by or emanating from any point source, to flow into the waters of this state. . .

W.Va. Code § 22-11-8(b)(1). "Person" means "any industrial user, public or private corporation, institution, association, firm or company organized or existing under the laws of this or any other state or country; State of West Virginia; governmental agency, including federal facilities; political subdivision; county commission; municipal corporation; industry; sanitary district; public service district; drainage district; soil conservation district; watershed improvement district; partnership; trust; estate; person or individual; group of persons or individuals acting individually or as a group; or any legal entity whatever." W.Va. Code

11

§ 22-11-3(14). Moreover, "other wastes" includes "all other materials and substances not sewage or industrial wastes which may cause or might reasonably be expected to cause or to contribute to the pollution of any of the waters of the state. . . ." Id. at § 22-11-3(12).

### West Virginia Groundwater Protection Act ("GWPA"):

(B) [I]t is the public policy of the State of West Virginia to maintain and protect the state's groundwater so as to support the present and future beneficial uses and further to maintain and protect groundwater at existing quality where the existing quality is better than that required to maintain and protect the present and future beneficial uses.

W.Va. Code § 22-12-2(b). Plaintiffs also cite to GWPA's accompanying regulations. See [Doc. 195 at 31]. Plaintiffs specifically cite to W.Va. C.S.R. § 47-57-4.1 (1994), which states:

Except for any source of class or sources which has been granted a variance for the particular contaminant at issue, any person who owns or operates a source subject to the Act which has caused, in whole or in part, the concentration of any constituent to exceed any applicable groundwater quality standard subject to the Act, must cease further release of that contaminant and must make every reasonable effort to identify, remove or mitigate the source of such contamination and strive where practical to reduce the level of contamination over time to support drinking water use of such groundwater.

W.Va. C.S.R. § 47-57-4.1. "Source" is defined as "any facility or activity which has caused a release or is reasonably likely to cause a release." Id. at § 47-57-2.13. Moreover,

12

"release" is defined as "any act or omission that results in the . . . leaching . . . of materials or contaminants in a manner that has caused or is reasonably likely to cause the entry of a constituent to groundwater." Id. at § 47-57-2.12.

### West Virginia Solid Waste Management Act ("SWMA"):

(e) A person may not dispose of any solid waste in this state in a manner which endangers the environment or the public health, safety, or welfare as determined by the director. . . .

W.Va. Code § 22-15-10(e). "Person" is defined here the same as it is defined in W.Va. Code § 22-11-8(b)(1). See W.Va. Code § 22-15-2(24). Moreover, "solid waste" includes "other discarded materials, including offensive or unsightly matter, solid, liquid, semisolid or contained liquid or gaseous material resulting from industrial, commercial, mining or community activities." W.Va. Code § 22-15-2(31).

The Manufacturing Defendants move to dismiss plaintiffs' negligence *per se* cause of action for two reasons. See [Doc. 144 at 29–31]. First, the Manufacturing Defendants argue that plaintiffs have plead no facts that establish the Manufacturing Defendants violated the WPCA, GWPA, and SWMA because these statutes "regulate private entities" and "apply to dischargers and depositors of pollutants in West Virginia, not up-the-stream-of-commerce manufacturers of products and substances that others might have released into the environment." [Doc. 144 at 29]. The Manufacturing Defendants argue that the "plain language of the three relevant statutes makes clear that they impose duties only on those who actually release contaminants into the environment, not on manufacturers who sell useful products to customers who then release contaminants into the environment."

[Id. at 29–30]. More specifically, the Manufacturing Defendants argue that based on the plain language of the statutes, "the regulations implementing them do not reach beyond the immediate sources of contamination and certainly do not impose obligations on or create causes of action against manufacturers or sellers up the stream of commerce." [Id. at 30]. The Manufacturing Defendants also assert that "research has not revealed even a single case that has applied the WPCA, SWMA, or the GWPA more broadly to reach manufacturers or sellers of products that others released." [Id.]. This Court disagrees.

Based on the broad definition of the word "person" and the purposes of the laws, this Court finds that the WPCA, SWMA, and the GWPA are comprehensive enough to cover the activities alleged and omissions of the Manufacturing Defendants. The plaintiffs have alleged that the defendants "acts and omissions . . . have caused and continue to cause past, present, and continuing violations of the [WPCA, SWMA and the GWPA]. . . ." [Doc. 1-1 at ¶ 211]. The plaintiffs Complaint also alleges that the contamination was a "direct proximate result of Defendants' statutory violations and negligent, wanton, and reckless acts or omissions. . . ." [Id. at ¶ 212]. Thus, taking the facts in the light most favorable to the plaintiffs, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' negligence *per se* claim is **DENIED**.

## V.     Public Nuisance

14

In West Virginia, "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E.2d 616, 621 (1985). A public nuisance interferes with a *public* right or inconveniences an indefinite number of people. *See Hendricks v. Stalnaker*, 181 W.Va. 31, 380 S.E.2d 198, 200–01 (1989); *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 34 S.E.2d 348, 354 (1945). An examination of the "reasonableness or unreasonableness of the use of property in relation to the particular locality" is a fair test to determine the existence of a public nuisance. *See Hendricks*, 181 W.Va. At 34; Syl. Pt. 5, *Sharon Steel Corp.*, 175 W.Va. 479; Syl. Pt. 3, *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981). A plaintiff only has standing to pursue a public nuisance claim if he or she has suffered a special injury different in kind from the public in general. *Hark*, 34 S.E.2d at 354. "A suit to abate a public nuisance cannot be maintained by an individual in his private capacity, as it is the duty of the proper public officials to vindicate the rights of the public." *Id*.

"The right to be free of contamination to the municipal water supply is clearly a 'right common to the general public', thus interference with that right would be a public nuisance." *Anderson v. W.R. Grace & Co.*, 628 F.Supp. 1219, 1233 (D.Mass. 1986). *See also Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 721 n.11 (1992) (noting that "the contamination of ground water may give rise to an action for public nuisance"). Therefore, "when a release of pollutants directly affects only the municipal water supply rather than a private water supply . . ., the pollutants affect only a right common to the general public and can give rise only to a public, rather than a private

15

nuisance." ***Rhodes***, 657 F.Supp.2d at 767–68 (citing ***Anderson***, 628 F.Supp. at 1233; Restatement (Second) of Torts § 821B cmt. b (explaining that conduct interfering with the public health constitutes a public nuisance)).

As Chief Judge Goodwin in the Southern District of West Virginia explained:

The conclusion in ***Anderson*** that the contamination of a municipal water supply is a public nuisance accords with West Virginia law. According to the Supreme Court of Appeals, a public nuisance "operates to hurt or inconvenience an indefinite number of persons." ***Hark***, 34 S.E.2d at 354. In other words, a public nuisance "affects the general public." ***Id***. The Supreme Court of Appeals has explained that this definition of a public nuisance is "consistent with the Restatement (Second) of Torts § 821B(1), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'" ***Duff v. Morgantown Energy Assocs. (M.E.A.)***, 187 W.Va. 712, 421 S.E.2d 253, 257 n.6 (1992).

***Rhodes***, 567 F.Supp.2d at 768.

In this case, when a water company provides water to the general public, the right to clean water from that company is a right common to all customers. The interference alleged by the plaintiffs is the contamination by PFAS and/or products containing PFAS of the water supply provided to all of plaintiffs' customers. The plaintiffs' Complaint alleges that the defendants "designed, manufactured, formulated, marketed, promoted, distributed, sold, supplied, used and/or discharged PFAS and/or products containing PFAS" and also "conceal[ed] . . . the dangers to human health and the environment. . . ." [Doc. 1-1 at ¶¶

16

182, 194]. The plaintiffs' Complaint also alleged that the defendants proximately caused the contamination of groundwater, including plaintiffs' drinking water supply. [Id. at ¶¶ 15–16, 183, 193). Accordingly, the alleged interference is an interference with a public right. Taking the facts in the light most favorable to the plaintiffs, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' public nuisance claim is **DENIED**.

## VI. Trespass

Under West Virginia law, to constitute a trespass, the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property. *Hark v. Mountain Fork Lumber Co.*, 127 W.Va. 586, 591–92, 34 S.E.2d 348, 352 (1945). "An invasion onto another's land must be tangible and constitute an 'interference with possession' in order to be an actionable trespass claim." *Sigman v. CSX Corp.*, 2016 WL 2622007 (S.D. W.Va. 2016) (citing *Rhodes v. E.I. du Pont de Nemours and Co.*, 657 F.Supp.2d 751, 771 (S.D. W.Va. 2009)).

Defendants cite to *Rhodes v. E.I. du Pont de Nemours and Co.*, 636 F.3d 88 (4th Cir. 2011) as an example when the Fourth Circuit has held that plaintiffs had "failed to produce evidence showing that the presence of PFOA in the water supplied to their homes has damaged or interfered with the plaintiffs' possession and use of their property." 636 F.3d at 96. However, plaintiffs argue, and this Court agrees, that *Rhodes* is distinguishable from the case at hand. In *Rhodes*, the plaintiffs were individuals and customers of the Parkersburg City Water Department. *Id.* at 92. The Fourth Circuit held

17

that because plaintiffs were unable to produce evidence supporting the essential element of injury under trespass, the plaintiffs' claims failed as a matter of law. Unlike in *Rhodes*, where the plaintiffs were private individuals, here, the plaintiffs own and operate the infrastructure which has been contaminated. Thus, this Court finds that the plaintiffs have alleged evidence showing that the presence of PFAS chemicals in the Weirton water system has damaged or interfered with the its possession and use of its property. See [Doc. 1-1 at ¶¶ 16–17]. Because the plaintiffs were able to produce allegations supporting this essential element of a trespass claim, the Manufacturing Defendants motion to dismiss with respect to the plaintiffs' trespass claim will be **DENIED**.

### VII. Damages

The Manufacturing Defendants maintain that the plaintiffs' damages claim fails because the relief they seek is not recoverable under West Virginia law. The Manufacturing Defendants assert that the plaintiffs do not have a right to recover expenditures for efforts to address PFAS detected in the Weirton Water System and the plaintiffs do not have a right to recover for alleged harm to natural resources or to Weirton Area residents. See [Doc. 144 at 36–42]. "It is simply premature to rule upon the issue of damages in the context of a motion to dismiss stage as there has been no discovery or development of a record in this case." *Mayor and City Council of Baltimore v. Monsanto Co.*, 2020 WL 1529014 (D.Md. 2020).

In any event, whatever the Manufacturing Defendants may argue is the proper measure of damages in this case, this Court is satisfied that the plaintiffs have properly pled damages at this stage. It is premature to rule upon the issue of damages in the

context of a motion to dismiss stage as there has been no discovery or development of a record in this case. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) ("'[t]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'").

## IV. CONCLUSION

For the foregoing reasons, this Court finds that The Manufacturing Defendants' Joint Motion to Dismiss [**Doc. 143**] should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED:** December 18, 2020.

JOHN PRESTON BAILEY
**UNITED STATES DISTRICT JUDGE**