IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**WEIRTON AREA WATER BOARD**
and **CITY OF WEIRTON**,

> Plaintiffs,

v.

**3M COMPANY, E. I. DUPONT DE NEMOURS
AND COMPANY, THE CHEMOURS COMPANY,
THE CHEMOURS COMPANY FC, LLC, CORTEVA,
INC., DUPONT DE NEMOURS INC., AGC
CHEMICALS AMERICAS INC., ARCHROMA U.S.,
INC., ARKEMA, INC., BASF CORPORATION,
CHEMDESIGN PRODUCTS, INC., CHEMGUARD
INC., CHEMICALS, INC., CLARIANT CORPORATION,
DAIKIN AMERICA, INC., DEEPWATER CHEMICALS
INC., DYNAX CORPORATION, DYNEON, LLC,
SOLVAY SPECIALTY POLYMERS USA, LLC.,
SOLVAY USA, INC., THE ELÉ CORPORATION,
ARCELORMITTAL WEIRTON LLC,** and **NEO
INDUSTRIES (WEIRTON), INC.**,

> Defendants.

**CIVIL ACTION NO. 5:20-CV-102**
Judge Bailey

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently pending before this Court is Arcelormittal Weirton LLC's Motion to Dismiss [Doc. 148], filed July 31, 2020. Therein, defendant Arcelormittal Weirton LLC ("AM Weirton") moves to dismiss the following claims asserted against it for failure to state a claim upon which relief can be granted: the Third Cause of Action for Public Nuisance, the Fourth Cause of Action for Negligence, the Fifth Cause of Action for Negligence Per Se and the Sixth Cause of Action for Trespass. Plaintiffs filed a Response and accompanying memorandum in support on October 2, 2020. [Docs. 196, 197]. On November 6, 2020,

1

AM Weirton filed a Reply. [Doc. 216]. Having been fully briefed, the instant Motion is now ripe for decision. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

The plaintiffs originally filed this action in the Circuit Court of Brooke County, West Virginia, on April 15, 2020. [Doc. 1-1]. In the Complaint, plaintiffs allege that the Weirton Water System has been contaminated with per- and poly-fluoroalkyl substances ("PFAS"), including perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"). [Id. at 7]. Plaintiffs allege that 3M Company, E.I. Dupont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., Dupont de Nemours, Inc., AGC Chemicals Americas Inc., Archroma U.S., Inc., Arkema, Inc., BASF Corporation, Chemdesign Products Inc., Chemguard Inc., Chemicals, Inc., Clariant Corporation, Daikin America, Inc., Deepwater Chemicals, Inc., Dynax Corporation, Dyneon, LLC, Solvay Specialty Polymers, USA, LLC., Solvay USA, Inc., and the Ele Corporation (collectively the "Manufacturing Defendants") "designed, developed, manufactured, marketed, and sold PFAS throughout the United States, including West Virginia." [Id. at 8]. Furthermore, plaintiffs assert defendants Arcelormittal Weirton LLC and Neo Industries (Weirton), Inc. (collectively the "Facility Defendants") "used, stored, distributed and/or discharged PFAS and/or products containing PFAS in their operations and caused the release of these chemicals into the surrounding soil, surface water and groundwater in and around their facilities." [Id.].

In their Complaint, plaintiffs allege that the defendants "knew or should have known that their operations would cause PFAS and/or products containing PFAS to be discharged

2

into the environment and inevitably contaminate surface water and groundwater drinking supplies. . . ." [Id. at 9]. Plaintiffs allege numerous causes of action against the defendants, including product liability for defective design against the Manufacturing Defendants (count 1), product liability for failure to warn against the Manufacturing Defendants (count 2), public nuisance against all defendants (count 3), negligence against all defendants (count 4), negligence per se against all defendants (count 5), trespass against all defendants (count 6), and fraudulent transfers against the DuPont defendants (count 7). As a result of the unlawful conduct, plaintiffs seek compensatory damages, punitive damages, and other damages.

On May 26, 2020, defendant Neo Industries (Weirton), Inc. filed a Notice of Removal [Doc. 1] arguing that this Court has jurisdiction over the litigation based on diversity of citizenship. On June 24, 2020, plaintiffs filed a Motion to Remand [Doc. 113] that this Court denied [Doc. 169] on August 10, 2020. On July 31, 2020, seventeen (17) Motions to Dismiss were filed by numerous defendants. On October 2, 2020, plaintiffs filed a response to the instant Motion [Docs. 196, 197]. On November 6, 2020, AM Weirton filed a Reply [Doc. 216]. For the following reasons, Arcelormittal Weirton LLC's Motion to Dismiss will be denied.

## II. STANDARD OF REVIEW

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a

3

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

### III. ANALYSIS

AM Weirton makes the following argument: the plaintiffs have failed to state a claim upon which relief can be granted in regard to the Third Cause of Action for Public Nuisance, the Fourth Cause of Action for Negligence, the Fifth Cause of Action for Negligence Per Se and the Sixth Cause of Action for Trespass. AM Weirton moves for dismissal of plaintiffs' claims, summarizing why they are entitled to dismissal as follows:

1.  Plaintiffs' claims against AM Weirton are unsupported by well-pleaded facts and therefore fail to meet federal pleading requirements under Fed. R. Civ. P. 8(a);

2.  Plaintiffs should not be granted leave to re-plead their deficient claims against AM Weirton because any such amendment would be futile; and

3.  AM Weirton joins in and incorporates by reference the following additional arguments set forth in the Memorandum of Law in Support of Manufacturing Defendants' Joint Motion to Dismiss filed separately in this proceeding:

    a.  the Complaint fails to State a viable trespass claim because Plaintiffs fail to allege a tangible invasion of their property;

    b.  Plaintiffs' claims fail because none of the claimed damages are recoverable under West Virginia law;

    c.  Plaintiffs have no right to recover expenditures for efforts to address PFAS detected in the Weirton Water System; and

    d.  Plaintiffs have no right to recover for alleged harm to natural

resources or to Weirton area residents.

[Doc. 148 at 1–2].

### A.   The Complaint contains sufficient factual allegations to establish, if true, that plaintiffs are entitled to relief.

First, this Court finds that the Complaint sufficiently alleges that AM Weirton's plant discharged PFAS. The Complaint alleges that plaintiffs discovered the Weirton Water System had been contaminated by PFAS, specifically identifying perflurooctane sulfonate and perfluorooctanoic acid. *See* [Doc. 1-1 at ¶ 7]. Plaintiffs go on to allege that the Facility Defendants, which include AM Weirton, caused the release of PFAS into the soil, surface water, and groundwater surrounding their facilities. [Id. at ¶ 12]. AM Weirton argues that there are several deficiencies in these allegations, that "the Complaint never identifies any specific PFAS compound or product containing PFAS allegedly 'used' by AM Weirton;" that it does not identify any specific "wastewater, leaks, storage and disposal practices" leading to the alleged discharge; and that the chemicals plaintiffs identified are ubiquitous and thus the Complaint has not linked them to AM Weirton's facility. [Doc. 149 at 5–7]. However, at the motion to dismiss stage, "detailed factual allegations" are not required. ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007). The Complaint contains factual allegations sufficient to establish, if true, that plaintiffs are entitled to relief. The Court agrees with AM Weirton that "[t]hey are not required, at this stage, to specifically identify the products containing PFAS used by this defendant or the details of the operations in which these chemicals were released, which are within the unique knowledge of the defendant." [Doc. 197 at 8].

Defendants cite to ***Schneider v. Donaldson Funeral Home, P.A.***, 733 F. App'x 641

6

(4th Cir. 2018) as an example of the Fourth Circuit rejecting "kitchen sink" pleading similar to this case. In *Schneider*, the Fourth Circuit found that plaintiff alleged only a conclusory recital of elements in alleging that "Defendants' actions have resulted in, *inter alia*, dredged spoil, solid waste, biological materials, heat, rock, sand, cellar dirt and/or industrial, municipal, and agricultural waste being discharged into the jurisdictional waters of the United States. . . ." *Schneider*, 733 F. App'x at 648. But the problem with the above allegation was that the Court found that it "is merely an incomplete list of what the [Clean Water Act] considers to be a 'pollutant'" and that there were no factual allegations supporting this claim. *Id.* at 649. Here, in contrast, the specific allegations against AM Weirton go beyond mere recitation of the elements. *See* [Doc. 1-1 at ¶¶ 82-85].

**B.      AM Weirton's Negligence Per Se argument fails for the same reasons laid out in this Court's previous Order [Doc. 250].**

In West Virginia, "the law in this state is now settled that the violation of a statute is *prima facie* negligence and not negligence *per se*." *Spurlin v. Nardo*, 145 W.Va. 408, 415, 114 S.E.2d 913, 918 (1960). *See also Moore v. Skyline Cab Co.*, 134 W.Va. 121, 59 S.E.2d 437 (1950); *Morris v. City of Wheeling*, 140 W.Va. 78, 82 S.E.2d 536 (1954); *Barniak v. Grossman*, 141 W.Va. 760, 93 S.E.2d 49 (1956). Violation of a statute can constitute *prima facie* negligence "if an injury proximately flows from the non-compliance and the injury is of the sort the regulation was intended to prevent." *Miller v. Warren*, 182 W.Va. 560, 390 S.E.2d 207, 208–09 (1990).

The relevant portions of the statutes in question are as follows:

**West Virginia Water Pollution Control Act ("WPCA"):**

(b) It is unlawful for any person, unless the person holds a permit therefor

7

from the department, which is in full force and effect, to:

(1) Allow sewage, industrial wastes or other wastes, or the effluent
therefrom, produced by or emanating from any point source, to flow into the
waters of this state. . .

W.Va. Code § 22-11-8(b)(1).   "Person" means "any industrial user, public or private
corporation, institution, association, firm or company organized or existing under the laws
of this or any other state or country; State of West Virginia; governmental agency, including
federal facilities; political subdivision; county commission; municipal corporation; industry;
sanitary district; public service district; drainage district; soil conservation district; watershed
improvement district; partnership; trust; estate; person or individual; group of persons or
individuals acting individually or as a group; or any legal entity whatever."  W.Va. Code §
22-11-3(14).  Moreover, "other wastes" includes "all other materials and substances not
sewage or industrial wastes which may cause or might reasonably be expected to cause
or to contribute to the pollution of any of the waters of the state. . . ."  Id. at 22-11-3(12).

### West Virginia Groundwater Protection Act ("GWPA"):

(B) [I]t is the public policy of the State of West Virginia to maintain and
protect the state's groundwater so as to support the present and future
beneficial uses and further to maintain and protect groundwater at existing
quality where the existing quality is better than that required to maintain and
protect the present and future beneficial uses.

W.Va. Code § 22-12-2(b).  Plaintiffs also cite to GWPA's accompanying regulations.
See [Doc. 195 at 31].  Plaintiffs specifically cite to W.Va. C.S.R. § 47-57-4.1 (1994), which
states:

8

> Except for any source of class or sources which has been granted a variance for the particular contaminant at issue, any person who owns or operates a source subject to the Act which has caused, in whole or in part, the concentration of any constituent to exceed any applicable groundwater quality standard subject to the Act, must cease further release of that contaminant and must make every reasonable effort to identify, remove or mitigate the source of such contamination and strive where practical to reduce the level of contamination over time to support drinking water use of such groundwater.

W.Va. C.S.R. § 47-57-4.1.  "Source" is defined as "any facility or activity which has caused a release or is reasonably likely to cause a release."  Id. at § 47-57-2.13.  Moreover, "release" is defined as "any act or omission that results in the . . . leaching . . . of materials or contaminants in a manner that has caused or is reasonably likely to cause the entry of a constituent to groundwater."  Id. at § 47-57-2.12.

**West Virginia Solid Waste Management Act ("SWMA")**:

> (e) A person may not dispose of any solid waste in this state in a manner which endangers the environment or the public health, safety, or welfare as determined by the director. . . .

W.Va. Code § 22-15-10(e).  "Person" is defined here the same as it is defined in W.Va. Code § 22-11-8(b)(1).  See W.Va. Code § 22-15-2(24).  Moreover, "solid waste" includes "other discarded materials, including offensive or unsightly matter, solid, liquid, semisolid or contained liquid or gaseous material resulting from industrial, commercial, mining or community activities."  W.Va. Code § 22-15-2(31).

AM Weirton moves to dismiss plaintiffs negligence *per se* claim because the plaintiffs do not "allege that AM Weirton's Facility ever committed a violation of any such statute involving PFAS or any products containing PFAS." [Doc. 149 at 10].  AM Weirton state that plaintiffs allegations "consist of nothing more than threadbare recitals of the elements of a purported cause of action, completely devoid of any supporting well-pleaded facts." [Id.].  This Court disagrees.  The plaintiffs have alleged that the defendants "acts and omissions . . . have caused and continue to cause past, present, and continuing violations of the [WPCA, SWMA and the GWPA]. . . ." [Doc. 1-1 at ¶ 211].  The plaintiffs Complaint also alleges that the contamination was a "direct proximate result of Defendants' statutory violations and negligent, wanton, and reckless acts or omissions. . . ." [Id. at ¶ 212].  Thus, taking the facts in the light most favorable to the plaintiffs, AM Weirton's motion to dismiss with respect to the plaintiffs' negligence *per se* claim is **DENIED**.

C.    **The Complaint contains enough specific allegations to plead a specific time frame.**

As to AM Weirton's argument that plaintiffs claims are not plausible because they do not specify a time frame as to AM Weirton's conduct, the Court finds that the Complaint contains enough specific allegations to state a plausible claim.  AM Weirton claims that, without a specific time frame alleged for the conduct, the Complaint does not show that the claims have been brought within the statute of limitations.  [Doc. 149 at 11].  AM Weirton further asserts that "[t]his is critically important, because AM Weirton's predecessor acquired the facility out of bankruptcy pursuant to an April 22, 2004 Order of Sale," in which liabilities and obligations were not assumed by the buyer.  [Id.].  The Complaint, however, alleges that PFAS were first detected in the Weirton Water System in June 2018, and in

March 2019 at the water treatment plant. [Doc. 1-1 ¶¶ 102-103]. In West Virginia, "where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Graham v. Beverage*, 211 W. Va. 466, 477, 566 S.E.2d 603, 614 (2002). Here, as in *Graham*, the Complaint makes clear that the thrust of plaintiffs' Complaint includes the alleged continuing wrongful conduct. Accordingly, resolving all doubts and inferences in favor of plaintiffs, the Court finds the Complaint plausibly alleges the tortious conduct falls within the statute of limits and within the time period after AM Weirton acquired its facility.

**D.     Insofar as AM Weirton has moved for dismissal by incorporating the arguments contained in the Manufacturing Defendants Joint Motion to Dismiss, AM Weirton's Motion with respect to those arguments is DENIED.**

AM Weirton also joins in the following arguments in the Manufacturing Defendants Motion to Dismiss:

VII.        The Complaint Fails To State A Trespass Claim. *See* [Doc. 144 at 35–36].

VIII.       Plaintiffs' Claims Fail Because None Of The Claimed Damages Are Recoverable Under West Virginia Law. *See* [Id. at 36].

VIII.A.    Plaintiffs Have No Right To Recover Expenditures For Efforts To Address PFAS Detected In The Weirton Water System. *See* [Id. at 36–39].

11

VIII.B.      Plaintiffs Have No Right To Recover For Alleged Harm To
             Natural Resources Or To Weirton Area Residents. *See* [Id. at
             40–42].

In the interests of brevity, this Court adopts the same analysis as it is laid out in [Doc. 250 at 17–19]. Thus, because the plaintiffs were able to produce allegations supporting this essential element of a trespass claim, AM Weirton's motion to dismiss with respect to the plaintiffs' trespass claim will be **DENIED**. Moreover, this Court is satisfied that the plaintiffs have properly pled damages at this stage and rules that it is premature to rule upon the issue of damages.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Arcelormittal Weirton LLC's Motion to Dismiss [**Doc. 148**] should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: December 18, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

12